NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CENTRAL LEWMAR, L.P.,          :

       Plaintiff,     :

                                  Civil Action No. 03-4671(JWB)

   v.                      :

                                  **O P I N I O N**

THOMAS J. GENTILIN and       :
MESA LABEL L.L.C.,

                           :

       Defendants.
                           :

**APPEARANCE**:

    CONNELL FOLEY
    By:  Liza M. Walsh, Esquire
        M. Trevor Lyons, Esquire
        Christine I. Gannon, Esquire
    85 Livingston Avenue
    Roseland, New Jersey  07068
    (Attorneys for Plaintiff)

    STARK & STARK
    By:  Martin P. Schrama, Esquire
    P.O. Box 5315
    Princeton, New Jersey  08543-5315
    (Attorneys for Defendants)

**BISSELL**, Chief Judge

    This case is before the Court on a motion by plaintiff Central Lewmar, L.P. ("Central Lewmar") for partial summary judgment pursuant to Fed. R. Civ. P. 56(c).  This Court has jurisdiction over this matter pursuant to Title 28 U.S.C. § 1332.

**FACTS**

Plaintiff Central Lewmar, a New Jersey limited partnership based in Newark, New Jersey, is principally engaged in the distribution of paper products. (See Compl., ¶ 1). Defendant Thomas J. Gentilin ("Mr. Gentilin"), currently residing in Colorado, was employed by Central Lewmar as a Vice President of Sales and as a sales agent. (See id., ¶¶ 1, 6). Defendant Mesa Label, L.L.C. ("Mesa Label") is a Colorado limited liability corporation with its principal place of business in Colorado. (See id., ¶ 3). Mr. Gentilin is the sole owner and principal of Mesa Label. (See id.)

While employed by Central Lewmar, Mr. Gentilin sold printable adhesive labels. (See Plaintiff's Statement of Uncontested Facts ("Plaintiff's SUF"), ¶ 6). On or about January 28, 1999, he solicited and obtained Wilmar Industries, Inc. ("Wilmar") as an account and customer for Central Lewmar. (See id.)

Mr. Gentilin's employment with Central Lawmar ended on March 14, 2003. (See id., ¶ 2; see also Defendants' Response to Plaintiff's SUF (admitting ¶¶ 1-10)). While employed, Mr. Gentilin had received compensation and other benefits of employment from Central Lewmar. (See Plaintiff's SUF, ¶ 4).

According to Central Lewmar, Mr. Gentilin incorporated Mesa Label while he was still employed by Central Lewmar. (See id., ¶

11).  Furthermore, plaintiff contends that while he was so employed, Mr. Gentilin solicited and obtained the Wilmar account for Mesa Label and away from Central Lewmar.  (See id., ¶ 12).

## PROCEDURAL HISTORY

On October 1, 2003, Central Lewmar filed in this Court a seven-count Complaint against Mr. Gentilin and Mesa Label (collectively "defendants").  On November 10, 2004, this Court granted defendants' motion to amend their Answer.  (See Central Lewmar, L.P. v. Thomas J. Gentilin and Mesa Label, LLC, Civil 03-4671 (Order) (GDH).  The Amended Answer, filed on November 19, 2004, contained counterclaims against Central Lewmar for (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, and (3) unjust enrichment.  (See Am. Answer at 5-7).

On January 24, 2005, Central Lewmar filed the current motion for a partial summary judgment, as to liability only, on three counts in the Complaint:  Count Two (breach of the duty of loyalty); Count Three (intentional interference with prospective economic advantage); and Six (unjust enrichment).  Defendants respond that the motion for summary judgment should be denied or continued pursuant to Fed. R. Civ. P. 56(f).  (See Defendants' Br. at 7).

**DISCUSSION**

**I.  Standard for a Rule 56(c) Motion for Summary Judgment**

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Kreschollek v. Southern Stevedoring Co., 223 F.3d 202, 204 (3d cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party.  See Boyle v. Allegheny Pennsylvania, 139 F.3d 386, 393 (3d Cir. 1998).  The moving party bears the burden of establishing that no genuine issue of material fact remains. See Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

The Supreme Court has stated that in evaluating a defendant's motion for summary judgment:

> [t]he judge must ask ... not whether ... the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented.  The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.  The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the

-4-

> plaintiff is entitled to a verdict ....

Anderson, 477 U.S. at 252. A fact is "material" only if it will affect the outcome of a lawsuit under the applicable law, and a dispute over a material fact is "genuine" if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. (See id.)

In order to survive a motion for summary judgment, a plaintiff must present more than a mere scintilla of evidence in his favor. (Id.) He "cannot simply reallege factually unsupported allegations contained in his pleadings." Anderson, 477 U.S. at 249; see also Clark v. Clabaugh, 20 F.3d 1290, 1294 (3d Cir. 1994). Only evidence that would be admissible at trial may be used to test a summary judgment motion; evidence with a deficient foundation must be excluded from consideration. See Blackburn v. United Parcel Service, Inc., 1999 WL 360546 (3d Cir. 1999).

## II. The Parties' Arguments

According to Central Lewmar, "Mr. Gentilin inequitably solicited, diverted and converted for his own benefit, Central Lewmar's thermal label business with Wilmar [], a former customer of Central Lewmar." (See Plaintiff's Br. at 1). Moreover, Central Lewmar argues that "relevant admissions by defendant Gentilin clearly establish that Central Lewmar is entitled to summary judgment in its favor as a matter of law, and no genuine

issue of material fact exists which could reasonably preclude the entry of that judgment." (See id. at 8).

In response, defendants argue that the motion for summary judgment should be denied or, in the alternative, continued pursuant to Fed. R. Civ. P. 56(f) because questions of fact exist and discovery is incomplete. (See Defendants' Br. at 7). Furthermore, defendants argue that Central Lewmar's motion with regard to the unjust enrichment claim must be denied because defendants plan to present an affirmative defense of "unclean hands." (See id. at 7-8). Defendants also allege that Central Lewmar materially breached its agreement with Mr. Gentilin; therefore, he is relieved of his obligations under the agreement. (See id. at 9). For that reason, defendants argue that Central Lewmar's motion for summary judgment on the breach of the duty of loyalty claim must be denied. (See id.) Lastly, defendants argue that summary judgment is inappropriate with regard to Central Lewmar's claim for tortious interference with prospective economic advantage because there are material issues of fact as to Mr. Gentilin's intent. (See id. at 11). Specifically, defendants contend that "the terms of Central Lewmar's Employee Handbook clearly raise the question of whether Gentilin's actions were prohibited at all." (Id.) For these reasons, defendants argue that Central Lewmar's summary judgment motion should be denied.

**III. Analysis**

This case has been brought pursuant to Title 28 U.S.C. § 1332, under diversity jurisdiction. As such, this Court must apply the substantive law of the State of New Jersey. See Tarsio v. Provident Ins. Co., 108 F. Supp. 2d 397, 401 (D.N.J. 2000).

    A.   Breach of the Duty of Loyalty

Under New Jersey law, "[a]n employee owes a duty of loyalty to the employer and must not, while employed, act contrary to the employer's interest." Chernow v. Reyes, 239 N.J. Super. 201, 204 (App. Div.), certif. denied, 122 N.J. 184 (1990). Specifically, while employed, an "employee has a duty not to compete with the employer's business." (Id., quoting United Board & Carton Corp. v. Britting, 63 N.J. Super. 517, 524 (Ch. Div. 1959), aff'd, 61 N.J. Super. 340 (App. Div. 1960), certif. denied, 33 N.J. 326 (1960)). Furthermore, it is a breach of an employee's duty of loyalty to solicit customers or potential customers of an employer or to perform comparable competitive acts. See Auxton Computer Enterprises, Inc. v. Parker, 174 N.J. Super. 418, 423-24 (App. Div. 1980) ("[An employee] may not solicit his employer's customers for his own benefit before he has terminated his employment. Nor may he do other similar acts in direct competition with the employer's business.")

In this case, Mr. Gentilin owed a duty of loyalty to Central Lewmar because he was an employee. While Mr. Gentilin had the

-7-

right to make preparations to start a competing business, he could not breach his duty of loyalty when doing so. See Lamorte Burns & Co. v. Walters, 167 N.J. 285, 303 (2001) ("[A]lthough an employee has the right to make preparations to start a competing business, the employee may not breach the undivided duty of loyalty he or she owes to his or her employer while still employed by soliciting the employer's customers or engaging in other acts of secret competition.")

Defendants argue that because Central Lewmar breached its agreement with Mr. Gentilin, he was relieved of his obligations under the duty of loyalty. (See Defendants' Br. at 9). According to defendants, "Central Lewmar has breached the express binding terms of [the Employee Handbook and Sales Compensation Program] by failing or refusing to pay ... sums properly due Gentilin." (Id.)

Defendants' argument must fail. Under New Jersey law, "where the counter-promise to perform relates to a material matter, the disappointed party has the right to rescind the contract." Giumarra v. Harrington Heights, 33 N.J. Super. 178 190 (App. Div. 1955). The materiality of the breach is a crucial element. (See id.) Mr. Gentilin claims that he was "shorted" and "taken advantage of" because of errors by Central Lewmar regarding his compensation. (See Gentilin Dep. at 48-49). The only basis for this claim is Mr. Gentilin's belief that he

"didn't catch everything": meaning he did not catch all of Central Lewmar's possible mistakes regarding compensation so that he was able to be reimbursed by Central Lewmar. (See id. at 56). This breach, if true, still does not rise to the level of a material matter permitting Mr. Gentilin to be relieved of his duty of loyalty. Mr. Gentilin was an at-will employee who owed Central Lewmar the requisite duty of loyalty. Mere mistakes in compensation that could have been rectified had Mr. Gentilin "caught everything" cannot be considered material. For that reason, defendants' argument that Mr. Gentilin was relieved of his duty of loyalty must fail.

Hence, Central Lewmar has established the necessary elements of its claim that Mr. Gentilin breached his duty of loyalty. Based on Mr. Gentilin's own admissions, he solicited a customer of Central Lewmar and proceeded to take that business for himself. (See Gentilin Dep. at 66-69). According to Mr. Gentilin, there is no doubt that he began conducting business with Wilmar in competition with Central Lewmar while he was working for Central Lewmar. (See id. at 116). Based on these admissions, there is no material issue of fact as to whether Mr. Gentilin breached his duty of loyalty to Central Lewmar. For that reason, summary judgment in favor of the plaintiff will be entered on Count Two of the Complaint.

B. Intentional Interference with
 Prospective Economic Advantage

The Supreme Court of New Jersey had identified four elements that are required for a party to make out a prima facie case for the tort of intentional interference with a prospective economic advantage: (1) a reasonable expectation of economic advantage to plaintiff, (1) interference done intentionally and with "malice," (3) causal connection between the interference and the loss of prospective gain, and (4) actual damages. See Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 750 (1989); see also Varrallo v. Hammond, Inc., 94 F.3d 842, 848 (3d cir. 1996). The reasonable expectation of economic advantage to the plaintiff does not require a contractual right. See Varrallo, 94 F.3d at 848. The malice requirement or this tort does not constitute "ill will" but rather "it means that harm was inflicted intentionally and without justification or excuse." Lamorte, 167 N.J. at 306. The malice factor is determined on an individual basis, under a flexible standard where the court looks to the defendant's actions in the context of the facts presented. (See id.; see also M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co., Inc., 205 F. Supp. 2d 306 (D.N.J. 2002). According to the New Jersey Supreme Court:

> Often it is stated that the relevant inquiry is whether the conduct was sanctioned by the "rules of the game," for where a plaintiff's loss of business is merely the incident of healthy competition, there is no compensable

-10-

> tort injury. The conduct must be injurious and transgressive of generally accepted standards of common morality or of law. The line is clearly drawn at conduct that is fraudulent, dishonest, or illegal and thereby interferes with a competitor's economic advantage.

Lamorte, 167 N.J. at 3036-307 (citations omitted).

Central Lewmar argues that all four elements of this tort have been established in this case. First, plaintiff had a reasonable expectation of economic advantage based on the previous orders from Wilmar. It was reasonable for Central Lewmar to expect that its business relationship with Wilmar would continue. Second, Central Lewmar argues that Mr. Gentilin acted with the requisite "malice" as defined under New Jersey law. According to Central Lewmar, Mr. Gentilin's actions were intentional and do not fall under any category of conduct that would be sanctioned by the 'rules of the game.' Third, Central Lewmar argues that "there is more than a reasonable probability that Central Lewmar would have continued to sell thermal labels to Wilmar but for Gentilin's ... solicitation of Wilmar's business." (See Plaintiff's Br. at 18). Lastly, Central Lewmar submits to this Court that it suffered actual damages in the amount of at least $108,082.11 as evidenced by the net profit that Mr. Gentilin gained through his own business with Wilmar.

(See id. at 19).[1]

Defendants argue that the malice element has not been established because Mr. Gentilin "was acting in accordance with the terms of the employment agreement." (See Defendants' Br. at 11). According to defendants, Mr. Gentilin was acting within the terms of his employment based on language in the Employee Handbook that states: "Employees may hold outside jobs as long as they meet with performance standards of their job with Central Lewmar." (Id.) Yet, defendants overlook language in the Employee Handbook that states: "Outside employment that constitutes a conflict of interest is prohibited." (Id.) As discussed previously, Mr. Gentilin's actions constituted a breach of his duty of loyalty to Central Lewmar. It follows that this "outside employment" constituted a conflict of interest, particularly because it involved procuring a current client of Central Lewmar. For these reasons, defendants' argument that Mr. Gentilin was acting in accordance with the Employee Handbook fails.

Furthermore, defendants argue that "[a]n employee who is not bound by a covenant not to compete after the termination of employment, and in the absence of any breach of trust, may

---

[1] Because, however, a defendant's profits are often an inaccurate measure of a plaintiff's damages, plaintiff in this case is not seeking summary judgment on damages in the present motions.

anticipate the future termination of his employment and, while still employed, make arrangements for some new employment by a competitor or the establishment of his own business in competition with his employer." (See Defendants' Br. at 12, citing Auxton Computer Enterprises, Inc. v. Parker, 174 N.J. Super. 418, 423 (App. Div. 1980)).  Yet, defendants fail to note that the very next sentence in Auxton states:  "The only restriction to such action is that he may not solicit his employer's customers for his own benefit before he has terminated his employment.  Nor may he do other similar acts in direct competition with the employer's business."  174 N.J. Super. at 423.  Hence, based on Auxton, it becomes clear that Mr. Gentilin's actions stretched beyond the acceptable parameters for seeking new employment or starting his own business.  As such, Mr. Gentilin's argument that he did not have the requisite malice fails.

    Defendants further argue that the third and fourth elements have not been met because Wilmar would have given its business to defendants after Mr. Gentilin left central Lewmar.  "[T]he timing of Mesa Label's dealings with Wilmar are [sic] irrelevant for the purposes of these parts of the test, as Wilmar was leaving Central Lewmar of its own free will in any event." (See Defendants' Br. at 12).  According to defendants, Central Lewmar cannot prove causation and, therefore, cannot show damages.

Under New Jersey law, contrary to defendants' claims, the timing is relevant and Central Lewmar has proven causation. Causation is demonstrated where there is proof that, absent the alleged interference, there was a reasonable probability that the victim of the interference would have received the anticipated economic benefit. (See Lamorte, 167 N.J. at 306). As previously discussed, Central Lewmar has a reasonable expectation of an economic benefit. There was a reasonable probability that Wilmar would have continued to purchase from Central Lewmar absent defendants' actions.

For that reason, this Court agrees that all four elements have been established by Central Lewmar, beyond any material dispute. Hence, summary judgment as to Count Three of the Complaint, intentional interference with prospective economic advantage, is granted.

### C. Unjust Enrichment

Under New Jersey law, to establish unjust enrichment, a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust. See, e.g., VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554 (N.J. 1994); Associates Commercial Corp. v. Wallia, 211 N.J. Super. 231, 243 (App. Div. 1986); Russell-Stanley Corp. v. Plant Industries, Inc., 250 N.J. Super. 478, 510 (Ch. Div. 1991). The unjust enrichment doctrine requires that plaintiff show that it

expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." VRG Corp., 135 N.J. at 554.  To recover under unjust enrichment, Central Lewmar must prove that defendants received a benefit, and that retention of the benefit without payment would be unjust. See Associates Commercial Corp., 211 N.J. Super at 244.

Central Lewmar has met the burden to prove unjust enrichment.  Mr. Gentilin acquired profits from his dealings with Wilmar that were above and beyond his compensation from Central Lewmar during his employment with Central Lewmar.  Moreover, that profit was at Central Lewmar's expense.

Defendants, however, present the affirmative defense of "unclean hands" in response to the unjust enrichment claim.  This affirmative defense must be addressed before this Court can rule on the summary judgment motion regarding this claim.

### 1. Unclean Hands

The basic equitable maxim of unclean hands is that "[a] suitor in equity must come into court with clean hands and he must keep them clean after his entry and throughout the proceedings."  A. Hollander & Son, Inc. v. Imperial Fur Blending Corp., 2 N.J. 235, 246 (1949); accord Johnson v. Johnson, 212 N.J. Super. 368, 384 (Ch. Div. 1986); Pollino v. Pollino, 39 N.J. Super. 294, 298-99 (Ch. Div. 1956).  "In simple parlance, it

merely gives expression to the equitable principle that a court should not grant relief to one who is a wrongdoer with respect to the subject matter in suit." Faustin v. Lewis, 85 N.J. 507, 511 (1981). While "[u]sually applied to a plaintiff, this maxim means that a court of equity will refuse relief to [any] party who has acted in a manner contrary to the principles of equity." Johnson, 212 N.J. Super. at 384.

According to Mr. Gentilin, "Central Lewmar breached its employment and compensation agreement with Gentilin by inflating their base cost per unit of products, inaccurately calculating commission percentages, and/or failing to factor in supplier givebacks and incentives." (Defendants' Br. at 8). Defendants argue that these "unclean" acts by Central Lewmar "were not only a driving force in Gentilin forming Mesa Label, but go to the very heart of any claims based upon commissions recoverable from Wilmar sales." (Id.)

The unclean hands doctrine is applicable only to cases where the particular claim is tied to inequitable conduct as an element of its creation. See, e.g., Prudential Ins. Co. of America v. Massaro, 2000 WL 1176541 (D.N.J. 2000) (stating that the primary principle of the unclean hands rule is that the alleged inequitable conduct must be connected, i.e., have a relationship, to the matters before the court for resolution); Lukaszewicz v, Lukaszewicz, 137 N.J. Eq. 383 (N.J. Ch. 1945). According to the

Supreme Court of the United States, courts should "apply the maxim requiring clean hands only where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation." Keystone Driller Co. v. general Excavator Co., 290 U.S. 240, 245 (1933).  The Supreme Court further stated:

> [Courts] do not close their doors because of plaintiff's misconduct, whatever its character, that has no relation to anything involved in the suit, but only for such violations of conscience as in some measure affect the equitable relations between the parties in respect of something brought before the court for adjudication.  They apply the maxim, not by way of punishment for extraneous transgressions, but upon considerations that make for the advancement of right and justice.

(Id.)  Furthermore, a court that is assessing whether to invoke the doctrine of unclean hands is not "bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion."  (Id. at 245-46).

In the instant case, defendants assert that the unclean hands of Central Lewmar "go to the very heart" of the unjust enrichment claim.  However, Gentilin's contentions that Central Lewmar was culpable in its actions regarding the base cost per unit of products, and/or calculations of commission percentages, and/or regarding supplier givebacks and incentives does not have any immediate and necessary relation to the equity sought by Central Lewmar in this action.  Here, Central Lewmar attempts to

prevent unjust enrichment because Mr. Gentilin received payment from a Central Lewmar customer while still employed by Central Lewmar.  The alleged wrongdoings of Central Lewmar as cited by defendants do not relate to Mr. Gentilin's actions of accepting compensation from Wilmar while still in plaintiff's employ.  For that reason, defendants' contention that the "unclean hands" affirmative defense precludes entry of summary judgment must fail.  Accordingly, Central Lewmar's claim for unjust enrichment has also been sustained.

> D.   Defendants' Request for Continue
>      the Motion for Summary Judgment
>      Pursuant to Fed. R. Civ. P. 56(f)

Defendants argue that Central Lewmar's motion for summary judgment should at least be continued under Fed. R. Civ. P. 56(f) pending additional discovery.

Absent a showing by defendants that denial of their motion to extend discovery would deprive them of crucial evidence or would result in fundamental unfairness, the Court has broad discretion in deciding whether to permit additional discovery. Habecker v. Clark Equip. Co., 942 F.2d 210, 218 (3d Cir. 1991); Wisniewski v. Johns-Mansville Corp., 812 F.2d 81, 90 (3d Cir. 1987).  Furthermore, a party seeking to reopen discovery in response to a summary judgment motion must demonstrate:  (1) the particular information sought; (2) how the information would preclude summary judgment; and (3) why it has not previously been

obtained.  Pastore v. Bell Tel. Co. of Pa., 24 F.3d 508, 511 (3d Cir. 1994) (quoting Dowling v. City of Philadelphia, 855 F.2d 136, 140 (3d Cir. 1988)).

Defendants have not met this standard.  Defendants have not noted the particular information sought.  Rather, the defendants argue that depositions of particular Central Lewmar employees "could corroborate and further develop evidence concerning defendants' counterclaims and affirmative defenses." (Defendants' Br. at 6).  According to Mr. Gentilin, these employees would testify regarding "the costs being inaccurate." (Id.; see also Gentilin Dep. at 41).

As discussed above, even if defendants could prove that Central Lewmar had inaccurately calculated Mr. Gentilin's compensation, this would not constitute a material breach directly connected to the claims addressed in the present motion.  Therefore, this testimony would not change the outcome reflected in this Opinion.[2]

For these reasons, defendants' request that the motion for summary judgment be continued under Fed. R. Civ. P. 56(f) pending additional discovery is denied.

---

[2]  However, that is not to say that subsequent testimony by these individuals could not be used as support for defendants' counterclaims against Central Lewmar.  The Court's decision today only addresses their significance regarding the affirmative defenses proffered by defendants to dispute the three counts presented in this summary judgment motion.

**CONCLUSION**

For the foregoing reasons, plaintiff's motion for summary judgment (on liability only) pursuant to Fed. R. Civ. P. 56(c), as to Count Two of the Complaint (breach of duty of loyalty), Count Three (intentional interference with prospective economic advantage), and Count Six (unjust enrichment) is granted.

```
                              /s/    John W. Bissell
                                    JOHN W. BISSELL
                                      Chief Judge
                              United States District Court
```

DATED:  June 1, 2005